# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| ALVIN STOKES, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CV406-290 |
| ) | |
| SAVANNAH STATE UNIVERSITY, ) | |
| BOARD OF REGENTS OF THE ) | |
| UNIVERSITY SYSTEM OF ) | |
| GEORGIA, ARTHUR L. MONCRIEF ) | |
| and CARLTON BROWN, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Defendants have filed a motion for summary judgment. Doc. 18. The Court granted plaintiff an extension of time in which to oppose the motion. Doc. 27. He failed to do so. Defendants' motion is thus deemed unopposed. Local Rule 7.5. As explained below, the defendants' motion for summary judgment should be **GRANTED** and judgment entered in their favor.

## I. BACKGROUND

Plaintiff Alvin Stokes served as Chief of the Savannah State University Police Department from 2000 until his termination in April of

2005. Doc. 18 at 1. He alleges that he was dismissed from his job in violation of his free speech rights and the Georgia Whistleblower Act, O.C.G.A. § 45-1-4. Doc. 1 Compl. at 6.

Prior to Stokes's termination, the university decided to employ a "master key system," providing a limited number of individuals with a key that accessed all buildings on campus. <u>Id.</u> at 2. Stokes wrote two memos to defendant Brown, the President of Savannah State, objecting to the program, one on September 9, 2004 and the other on March 28, 2005. <u>Id.</u> He also sent a letter to defendant Moncrief in September of 2004. <u>Id.</u> at 3. Moncrief, the Vice-President for Business and Finance, was plaintiff's direct supervisor. <u>Id.</u> at 1. Stokes contends that his speech concerning the inclusion of the police department in the master key program was the sole reason for his termination. <u>Id.</u> at 3.

Defendants contend that Mr. Moncrief had reservations regarding Stokes's performance in other regards. <u>Id.</u> at 1. He gave several directives to Stokes that he claims Stokes ignored. He directed Stokes to have the police department certified by C.L.E.E.R., an international law enforcement agency. <u>Id.</u> He also directed Stokes to focus more on

community-oriented policing then student policing. Id. at 2. According to Moncrief, Stokes failed to focus on these directives. Id. Additionally, Moncrief had many administrative qualms with Stokes regarding his choice of public safety officers. Id. One of Stokes's officers allegedly violated the university's police pursuit policy, and Stokes allegedly refused to acknowledge the violation. Id. These concerns allegedly led defendant to form an ad hoc committee to review the police department. Id. Following its review, the committee recommended that Stokes be allowed to resign or be terminated from his position. Id. Shortly after the review, Moncrief terminated Stokes's employment. Id.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it might affect the outcome of the case under the governing law. . . . It is 'genuine' if the record taken as a whole could

lead a rational trier of fact to find for the non-moving party." Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1518 (11th Cir. 1990) (citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for

4

trial." Tidmore v. BP Oil Co./Gulf Prods. Div., 932 F.2d 1384, 1387 (11th Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). The Court must consider the entire record in the case, not just those portions of the record which have been singled out for attention by the parties. Baker, 903 F.2d at 1519.

## III. ANALYSIS

### A. Plaintiff's Free Speech Claim Fails

The Court must undertake a four-stage analysis in evaluating a First Amendment public employee retaliation claim under 42 U.S.C. § 1983. The Court first must decide, as a matter of law, (1) whether the speech in question can "be fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146 (1983). The Court must also ask "whether the employee spoke *as a citizen* on a matter of public concern." Battle v. Bd. of Regents, 468 F.3d 755, 760 (11th Cir. 2006) (emphasis added) (quoting Garcetti v. Ceballos, 126 S.Ct.

1951, 1958 (2006)). If the speech involves a matter of public concern spoken by a citizen, the Court must ask (2) whether "the interests of the [public employee], as a citizen, in commenting upon matters of public concern" outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). If the Court finds that the speech was protected, the Court must determine (3) whether the protected speech was a "'substantial factor' – or, to put it in other words, that it was a 'motivating factor' in the . . . [adverse employment] decision." Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Finally, the Court must determine (4) whether, in the absence of the protected speech, the government-employer "would have reached the same decision." Id.

Plaintiff's claim founders on the first element: he cannot demonstrate that he spoke as a citizen regarding a matter of public concern. Garcetti, 126 S.Ct. 1951. Garcetti held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes,

and the Constitution does not insulate their communications from employer discipline." Id. at 1960. In plaintiff's deposition, he states on several occasions that the letters he wrote to defendants Moncrief and Brown were considered to be part of his job. Doc. 22 at 36, 46, 49. Accordingly, plaintiff's First Amendment claim fails, as he cannot show that he spoke as a citizen on a matter of public concern.[1]

## B. Plaintiff's State Law Retaliatory Firing Claim Fails

Plaintiff also alleges that he was improperly terminated under Georgia's Whistleblower Act, O.C.G.A. § 45-1-4. The Act was amended in 2005 to change the statute of limitations. Doc. 18 at 21. In relevant part, the Act states that

> [a] public employee who has been the object of retaliation in violation of this Code section may institute a civil action . . . within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier.

O.C.G.A. § 45-1-4(e)(1). Plaintiff discovered the alleged retaliation no later than August 10, 2005, when defendant Brown issued a final

---

[1] As plaintiff failed to provide any affirmative evidence in response to this motion, the Court finds it unnecessary to examine the First Amendment issue in greater detail. Likewise, the Court will not explore defendants' claims of sovereign and qualified immunity. The First Amendment claim simply fails on the merits.

termination of plaintiff's employment. Doc. 1 Compl. at 6. Plaintiff filed suit in the Chatham County Superior Court on November 14, 2006. Doc. 1 Compl. at 7. The complaint was filed outside of the one year limitations period, thus his claim is time-barred.[2]

## IV. CONCLUSION

For all of the above reasons, the Court finds that plaintiff's First Amendment claim fails on the merits, and his claim under Georgia law is barred by the statute of limitations. Accordingly, the Court recommends that defendants' motion be **GRANTED** and plaintiff's complaint be **DISMISSED**.

**SO REPORTED AND RECOMMENDED** this 13TH day of November, 2007.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[2] Though the statute was amended as the events plaintiff described in his complaint were occurring, plaintiff fails to provide any evidence or argument disputing the application of the current statute of limitations to his claim. The Court therefore applies the statute as currently drafted.